AUGUSTIN DALY, Respondent, *v.* JOHN STETSON, Appellant.

Plaintiff entered into a contract with defendant, by which he sold to him the exclusive right to give performances of certain plays for thirty consecutive weeks. Defendant agreed to pay plaintiff $200 each week "commencing the first Saturday after said performance begins." In an action to recover an alleged balance due under said contract it was admitted that the perform- ance began as contemplated by the contract. Defendant claimed that the condition of the contract was that he should produce the plays each week and that without proof that he had so done, plaintiff could not recover. *Held,* untenable; that after the commencement of the performance, if defendant neglected or refused to produce the plays, it was a breach of the contract on his part, and did not shield him from his obligation to pay the stipulated price for each week until the end of the time specified.

Defendant set up as a counter-claim a right, as assignee of N., to royalties on a certain play performed by plaintiff. It appeared that a contract was entered into between N. and A., a dramatic author, by which A. assigned to N. for his theatre in New York the exclusive right of performance of all plays, dramas and comedies theretofore or thereafter written by A.; also "all property rights on all these plays for the United States," so that N. "exclusively has the right to give to other stages  *  *  *  the permission to perform said plays, to fix and determine the royalties for the same and collect said royalties from the other managers, and  *  *  *  to act as the sole proprietor of the same," N. to pay a certain royalty for

, each performance of these plays at his own theatre and one-half of all the royalties received by him "by disposing of his property-right to these plays to the other theatres." An annual accounting was provided for. The contract was to continue two years and after that from year to year unless revoked by one of the parties. In 1881 N., describing himself : as an agent of A., entered into a contract with plaintiff, giving him the right to adapt the plays of A., for performances in English, plaintiff to pay to N., as such agent, specified royalties. It also appeared that the two years had expired, and N. had been notified of the revocation of the contract by A., prior to the adaptation by plaintiff of the plays, the royalties claimed for which N. assigned to defendant and which constituted the counter-claim, and plaintiff had procured his rights to that play directly from A. *Held*, that under the contract with A., N. was an agent merely; that he acquired thereunder no title to said plays and upon notice of revocation being given as provided, his agency ceased ; and therefore the counter-claim was not sustained.

,Reported below (22. J. & S. 202).

(Argued December 11, 1889; decided January 14, 1890.)

APPEAL from judgment of the General Term of the Superior Court of the city of New York, entered upon an order made February 14, 1887, which affirmed a judgment in favor of plaintiff, entered upon a verdict.

The nature of the action and the facts are sufficiently stated in the opinion.

*A. J. Ditenhoefer* for appellants. The complaint should have been dismissed on the ground that there was no evidence that the defendant produced the plays during the term for which judgment was rendered. (*Perry* v. *Dickerson*, 85 N. Y. 345 ; *Howard* v. *Daly*, 15 id. 462.) The court erred in dismissing the second and third counter-claims, relating to the production of Von Schoenthan's plays "7–20–8" and the "Passing Regiment." (*Hurd* v. *Cook*, 75 N. Y. 354 ; *Depew* v. *Kayser*, 3 Duer, 335 ; *Hoffman* v. *A. Ins.*, 32 N. Y. 405–413 ; *Barlow* v. *Scott*, 24 id. 40 ; *Ripley* v. *Larmouth*, 56 Barb. 31 ; *Reed* v. *Bently*, 4 K. & John. 662–663 ; *Coghlan* v. *Stetson*, 10 Fed. Rep. 727–729 ; *Howard* v. *Hale*, 6 L. T. Rep. 648 ; *Stoop* v. *Smith*, 100 Mass. 63–66 ; *West* v. *Smith*, 101 U. S. 263.) The first counter-claim relating to L'Arronge's play, "Dollars and Sense," should have been allowed, and it

was error to direct its disallowance, if the jury found that plaintiff entered in good faith into the contract with L'Arronge for the same play. (*Lawrence* v. *Brown*, 5 N. Y. 394; *Baker* v. *U. M. L. Ins. Co.*, 43 id. 289; *Wilcox* v. *Howell*, 44 id. 402; *H. M. Co.* v. *Farrington*, 82 id. 121, 129; *Andrews* v. *A. L. Ins. Co.*, 85 id. 334; *Widerwax* v. *Jacques*, 18 Wkly. Dig. 240; *Farrell* v. *Krum*, 17 id. 471; *Vietor* v. *I. N. Co.*, 13 J. & S. 142–145; Parsons on Contracts, 293, chap. 4, § 9; *Warring* v. *Somborn*, 82 N. Y. 604; *Wilcox* v. *Howell*, 44 N. Y. 398; *Royce* v. *Watrous*, 73 id. 597; *Field* v. *Mayor, etc.*, 6 N. Y. 179; *Devlin* v. *Mayor, etc.*, 63 id. 8; *Morton* v. *Naylor*, 1 Hill, 583; *Hall* v. *City of Buffalo*, 1 Keyes, 193, 301; *Alger* v. *Scott*, 54 N. Y. 16; *Lowery* v. *Steward*, 25 id. 239; *Everson* v. *Gere*, 40 Hun, 250; *Mitchell* v. *Winslow*, 2 Story, 630.) The court erred in admitting L'Arronge's letter to plaintiff. (*Dodge* v. *F. S. Bank*, 93 U. S. 379; *Putman* v. *Matthewson*, 15 Wkly. Dig. 128.)

*Stephen H. Olin* for respondent. It was not error to dismiss the second and third counter-claims. (Story on Agency, §§ 462, 466; *Hunt* v. *Rousmanier*, 8 Wheat. 174; Story on Agency, § 474; *Moller* v. *Tuska*, 87 N. Y. 169; *Sigerson* v. *Matthews*, 20 How. [U. S.], 496; Story on Agency, § 403; *Taintor* v. *Prendergast*, 3 Hill, 72; Story on Agency, 11–16; *Devlin* v. *Mayor, etc.*, 63 N. Y. 8.) The charge of the court in relation to the first counter-claim was at least as favorable to the defendant as it should have been. (*Nicoll* v. *Burke*, 13 J. & S. 526–537; *Field* v. *Mayor, etc.*, 6 N. Y. 186.) There were no errors in the admission or exclusion of evidence. (*Collender* v. *Dinsmore*, 55 N. Y. 200; *Harrison* v. *Kirke*, 6 J. & S. 396; *Eighmie* v. *Taylor*, 98 N. Y. 288; Stephen's on Evidence, Art. 90; Code Civ. Proc., § 723; *Levin* v. *Russell*, 42 N. Y. 251.)

HAIGHT, J. This action was brought to recover a balance alleged to be due upon a contract. The complaint alleged that on or about the 1st day of October, 1883, the plaintiff and defendant made, signed and delivered an agreement the

material portions of which are as follows : "Memorandum of
agreement made this 1st day of October, 1883, by and between
Augustin Daly, manager Daly's theatre, New York, and John
Stetson, lessee Fifth Avenue theatre of New York, for them-
selves and their respective executors, administrators and assigns,.
to wit, viz. : said Daly hereby sells to said Stetson the exclusive
right to give performances of the plays of "Pique" and
"Divorce" for thirty consecutive weeks during the theatrical
season of 1883–84, commencing on or about Monday, October
22, 1883, in all the cities and towns of the United States and
Canadas excepting the city of New York, etc.,    *    *    *  one·
performance each night to be given during such period.    The
said Stetson hereby agrees to pay said Daly the sum of $200·
each week for thirty consecutive weeks commencing on the
first Saturday after said performance begins, payable to said
Daly in the city of New York".

The complaint further alleged that the defendant, though
often requested so to do, had not paid the sums of money due
under the agreement or any part thereof, except five sums of
$200 each paid respectively on the 30th day of October, and
the 5th, 10th, 17th and 24th days of November, 1883, and that
there was still due and owing the sum of $5,000, besides interest,
for which sum judgment was demanded.

The answer does not deny the allegations of the complaint
further than that there was the sum of $5,000 besides interest
due and owing.   Upon the trial the plaintiff's counsel opened
the case to the jury and it was then admitted that the interest
upon the $5,000 claimed by the plaintiff amounted to the sum
of $634.94.   Thereupon the plaintiff rested, and the defend-
ant's counsel moved to dismiss the complaint on the ground
that the plaintiff cannot recover except upon the performances
given by the defendant and that it was incumbent upon the
plaintiff to show that the defendant had given the performances ;
that the condition of the contract is that the defendant perform
each week.   This motion was denied and an exception was.
taken which presents the first question which we are called
upon to consider.

We do not understand that the right of the plaintiff to recover, depends upon a condition that the defendant produces the plays each week. By the terms of the agreement the plaintiff sold to the defendant the exclusive right to give performances of the plays for thirty consecutive weeks, commencing on or about Monday, October 22, 1883; one performance was to be given each night during that period and the defendant agreed to pay the plaintiff the sum of $200 each week for thirty consecutive weeks, commencing on the first Saturday after the performances began. The performances began as contemplated by the agreement and for five weeks the contract price was paid. If, after that time, the defendant neglected or refused to produce the plays, it was a breach of the contract on his part and does not shield him from his obligation to pay the stipulated price for each week thereafter, until the end of the thirty consecutive weeks mentioned in the contract. It therefore appears to us that the motion was properly denied.

The other questions which we are called upon to consider, relate to the counter-claims set forth in the defendant's answer. It appears that the plaintiff was a theatrical manager and as such had produced at his theatre a play known as "Dollars and Sense," of which one Adolph L'Arronge, of the city of Berlin, Germany, was the author, on which his gross receipts amounted to the sum of $50,383.76; that he had also produced another play known as "7–20–8," of which F. Von Schoenthan, of Berlin, was the author, the gross receipts of which amounted to the sum of $49,982.62; and also another play under the name of "The Passing Regiment," by the last named author, the gross receipts of which amounted to $1,870. It is claimed that one Adolph Neuendorff, of the city of New York, was entitled to a royalty of five per cent upon the gross receipts for the production of these plays and that his claim has been assigned and is now vested in the defendant. Whilst, on the other hand, it is claimed on behalf of the plaintiff that the right to produce these plays was obtained from the authors through their agent in Berlin, and that the royalty accrued has been

paid to them.    It thus becomes necessary to consider the nature of the defendant's claim to the royalties.

On the 15th of June, 1878, at Berlin, a contract was entered into in writing between Adolph L'Arronge and Adolph Neuendorff, of which the following is a translation: "Between Mr. Ad. Neuendorff, manager of the Germania Theatre in New York, and the dramatic author, Mr. Adolph L'Arronge, in Berlin, is this day the following contract agreed upon and closed:

"After Mr. Ad. Neuendorff to the other contractor, Mr. A. L'Arronge, has paid the sum of five marks in hand, Mr. L'Arronge assign to Mr. Ad. Neuendorff, first; for the Germania Theatre in New York, managed by Mr. A. Neuendorff, the exclusive right of performance of all plays, dramas and comedies composed or arranged by Mr. A. L'Arronge, and which, from to-day forth, will be written by Mr. A. L'Arronge; and also that formerly composed play by Mr. L'Arronge, called 'Mein Leopold.'    He furthermore assigns to Mr. Ad. Neuendorff, exclusively, all property rights on all these plays for the United States of America, so that Mr. Neuendorff exclusively has the right to give to other stages in North America, German as well as English, the permission to perform said plays, to fix and determine the royalties for the same, and collect such royalties from the other managers; and furthermore, to have the plays translated and adapted; in short, that Mr. Neuendorff is authorized to act as the sole proprietor of the same.

"Mr. Neuendorff pays to Mr. L'Arronge, for every performance of these new plays at the Germania Theatre in New York, a royalty of five per cent of the gross receipts.    All other moneys which Mr. Neuendorff will receive by disposing of his property right to these plays to other theatres of the United States are to be divided equally between Mr. Neuendorff and Mr. L'Arronge, after deducting, first of all, expenses for translation and adaptation, or cost arising from other causes. The account and payment of all moneys due to Mr. L'Arronge must be made every year after the close of the season, at latest, till the first of July.

" Mr. L'Arronge binds himself to deliver to Mr. Neuendorff the manuscript of each play, at latest, four weeks after the first performance of said play in Germany or Austria.

" The duration of this contract is determined for the time from July 1, 1878, till July 1, 1880, after the termination of which term it continues from year to year, unless revoked by one of the contractors on or before the first of April of each year."

Subsequently, and on the 27th day of December, 1881, Neuendorff entered into a written agreement with the plaintiff reciting that, whereas, said Neuendorff is the agent of Adolph L'Arronge and several other dramatic authors residing on the continent of Europe for the production, sale and licensing the performances and translations of their unprinted and unpublished plays and dramas throughout the United States and also for the dominion of Canada, it was agreed in consideration of one dollar paid to Neuendorff individually, and one dollar paid to him as agent of the persons named as authors, he, for himself and as agent of the authors named, agreed to deliver to the plaintiff a copy of every unpublished or unprinted play or dramatic composition written by the authors named, or either of them, of which he, Neuendorff, may become the agent, within a reasonable time after he shall receive the same for translation into the English language and assign and grant unto the plaintiff the sole and exclusive right of making adaptations of such plays in English and of performing them on the stage or of causing or permitting to be performed such English versions or adaptations of them throughout the United States and Canada upon payment to said Neuendorff as such agent as aforesaid, for every performance in the city of New York of either such plays performed by the plaintiff a royalty or sum equal to five per cent of the gross receipts of such performances, payable nightly, and of one-half of the net royalties received by the plaintiff for all performances under his licenses given by other persons in any other part of the United States or Canada.

It was further provided that this agreement should apply to all plays and dramatic compositions of the said authors which

shall be produced by the plaintiff at any time between the 1st day of January, 1882, and the last day of December, 1884, and that in the event of failure of the plaintiff to make the payments stipulated, that Neuendorff, as the agent of the authors, shall have the right to stop and enjoin each and every performance of the plays.

Afterwards, and about the month of November, 1882, L'Arronge completed a play known in German as "Die Sorglosen" which he sent to Mr. Neuendorff who delivered the same to Mr. Lester Wallack, a theatrical manager, in the city of New York who kept the same until the latter part of March or the 1st of April, 1883, and then returned it to him. In the meantime, the plaintiff, hearing of this play called upon Neuendorff for it and was informed that he had delivered the same to Mr. Wallack and when questioned why he had done so stated that he had done it in consequence of a direction from Mr. L'Arronge who told him that the plaintiff had a good many of his plays which he had not produced, and not to give him any more until he had produced those he had on hand. Thereupon the plaintiff wrote Mr. L'Arronge in reference thereto, who sent the play to him under an arrangement that the royalty was to be paid to him through his agent, Bloch, in Berlin. Subsequently Neuendorff delivered to the plaintiff his copy of the play returned by Wallack. The plaintiff thereupon caused the play to be translated and adapted for production in English upon his stage under the name of "Dollars and Sense."

It further appears that Bloch, who was the general agent at Berlin for Von Schoenthan and L'Arronge, in January, 1883, had correspondence with Neuendorff in reference to unpaid royalities on the contract under which he was collecting them and gave him notice of the termination of the contract of Von Schoenthan and L'Arronge. The letter from Block to Neuendorff does not appear in the case, but under date of January 28, 1883, Neuendorff wrote Bloch, from which we extract the following : "First of all I acknowlege the receipt of your letters, in which you notify me that Mess.

Schoentham and L'Arronge consider their contracts with me to be null and void after this season. Of course, I am compelled to accept this notification at the close of the present season, and merely request you to let me have the pieces for the German stage in the future, as promised me in your letter, because in reality I have so far been the only one from whom the authors have received anything tangible for their pieces, so that I should not, in return, be overlooked in the future. Be that as it may, I rely in this matter entirely upon you, my dear Mr. Bloch."

It further appears that Bloch was authorized by the author to terminate the contract in question.

It is now contended that under the contract the title to the play and the right to produce it upon the American stage vested absolutely in Neuendorff. We are consequently called upon to construe the instrument and determine its force and effect. As we have seen Neuendorff first pays to L'Arronge the sum of five marks and L'Arronge assigns to him for the Germania theatre in New York, managed by him, the exclusive right of performance of all plays, dramas and comedies composed or arranged by L'Arronge, and which from that time forth will be written by L'Arronge. Under this clause Neuendorff is given the exclusive right to produce the plays composed by L'Arronge in the Germania theatre in New York during the time specified in the contract to which we shall subsequently call attention. As we understand, the plays in this theatre were produced in the German language and this clause is independent of the subsequent clauses of the contract under which the questions we have to consider arise.

*Second.* L'Arronge assigns to Neuendorff exclusively all property rights on all of the plays for the United States of America, so that Neuendorff exclusively has the right to give to other stages in North America, German as well as English, the permission to perform the plays, to fix and determine the royalties for the same and to collect such royalties from the other managers, to have the plays translated and adapted, and

in short Neuendorff is authorized to act as the sole proprietor of the same.

It is under this clause that it is claimed that Neuendorff became vested with the title to these plays. It is true that the contract contains words and phrases that are not usually found in instruments creating agencies or giving a power to act for one as his attorney or representative, and that some of these words and phrases are common in instruments conveying absolute title, but in construing this instrument we must ascertain, if possible, the purpose and understanding of the parties so as to give effect to their intention. L'Arronge assigns to Neuendorff exclusively all property rights on all of the plays for the United States of America. What for? So as to vest the absolute title in him? No; but so that Neuendorff may give the exclusive right and permission to managers of other stages in North America, German as well as English, to perform the plays. He also assigns to Neuendorff all property rights so as to enable him to fix and determine the royalties for the plays and to collect the same from the other managers. The only property rights connected with these plays is the percentage or royalty that can be obtained from them by their production, It could not have been the intention to assign and transfer to Neuendorff absolutely the royalties or percentage, for subsequently Neuendorff agrees to pay to L'Arronge five per cent on the gross receipts of his own theatre and one-half of the royalty that he gets from the managers of other theatres. "Mr. Neuendorff is authorized to act as sole proprietor of the same." He acts as proprietor so far as others are concerned so that he can give to them the right to produce the plays, etc. · But his acting as proprietor for the purpose mentioned in the contract does not of itself make him a proprietor, so far as L'Arronge is concerned. But this contract was to continue from the 1st of July, 1878, to the 1st of July, 1880, and from year to year thereafter until revoked by one of the contracting parties on or before the 1st of April in each year. So that here we have a provision terminating the power of Neuendorff under the contract, after which he cannot act as proprietor or further

represent L'Arronge in the collection of royalties. No power is given him to sell, transfer or dispose of the plays or either of them. He is only given the right to perform the plays himself in his own theatre and to give permission to the managers of other stages to perform them and only for such length of time as his power continues under the contract.

It consequently appears to us that when the contract is terminated his power under it is determined, that the rights of all parties claiming under him cease and are determined. That his relation to L'Arronge was that of an agent and representative, which could be terminated under the provisions of the contract, and that this was done by the letters of Bloch which were received by him on or about January 28th, 1883. Undoubtedly his authority under the contract continued thereafter until the close of the season on the 25th day of March thereafter.

Again, it will be remembered that the play of "Dollars and Sense" had not been written at the time this contract was executed. It was not completed until about the month of November, 1882. It was sent to Neuendorff who received it and attempted to place it with Mr. Wallack for production, but failing in that he again obtained it and handed it to the plaintiff. This was the latter part of March or the first of April and after the plaintiff had received the play from the author, and after Neuendorff had been notified of the termination of the contract. It was at about the time that the season closed and his power to act under the contract was terminated. He does not claim that the plaintiff accepted it from him under an arrangement to produce it and it was not, in fact, produced until the next fall. No other disposition was made of it until the 18th day of April, at which time he attempts to sell, assign and transfer all of the plays or dramatic works received by him from L'Arronge, including the play in question, to one George W. Hyatt. As we understand, Neuendorff's season closed on the 25th of March. He so states in his letter of January 28th to Bloch. After that time his power to act under the contract ceased. He had no further right,

power or authority to sell, assign or transfer the plays or dramatic writings of L'Arronge, or to grant permits for their production. This view does not appear to us to be in conflict with the understanding of the parties, or as they had construed and acted upon the contract during its existence. Neuendorff in making his contract with the plaintiff in 1881 mentions and describes himself as agent of the authors. The contract is to pay him royalties *as agent*, and he, *as agent* is given the right to enjoin the performances in case of non-payment. Neuendorff by his letter of January 28th, 1883, in effect concedes the right of the authors to terminate his contract at the close of the season, and up to that time it does not appear that he had ever attempted to sell, transfer or dispose of any of the plays of L'Arronge, sent to him further than to procure their performance upon the payment of a royalty in accordance with the provisions of the contract.

Neuendorff had also entered into a contract with Von Schoenthan for the production of his plays in America, similar in many respects to the L'Arronge contract, but not containing so many words and phrases usually appearing in contracts for the absolute transfer of property. The trial court held that under the Von Schoenthan contract Neuendorff was an agent merely, and consequently instructed the jury that as to the second and third counterclaims, they should be disallowed. That court, however, held that as to the L'Arronge contract, Neuendorff became the proprietor of the play of "Dollars and Sense," and therefore submitted to the jury the question of the good faith of the plaintiff in procuring the play from the author, and as to whether Neuendorff was estopped from questioning his right to produce it. Upon this issue the jury found for the plaintiff. It will not be necessary for us to further consider the Von Schoenthan contract, for, under the construction which we have given to the L'Arronge contract, it disposes of all questions pertaining to the former contract. Neither will it become necessary to consider the exceptions taken to the admission or rejection of evidence, or to the charge of the

court, for under the view which we take of the L'Arronge contract neither of the counter-claims can be allowed, and the trial court could properly have directed a verdict for the plaintiff.

The judgment should be affirmed with costs.

All concur.

Judgment affirmed.